WEATHERBY vs. MEIKLEJOHN and another.

*October 16 — October 31, 1882.*

COUNTERCLAIM: DEMURRER. *(1) For what purpose defenses considered on demurrer to counterclaim. (4:3) Improper counterclaim.*
WATERCOURSES. *(2) What streams navigable. (3, 4:2) Artificial channel: dedication: riparian rights. (4) Case stated.*

1. Upon a demurrer to a counterclaim the defensive portion of the answer will not be considered, except for the purpose of making certain what might otherwise be regarded as indefinite and uncertain in the counterclaim.
2. It is the settled law of this state that streams of sufficient capacity to float logs to market, are navigable.
3. *It would seem* that an artificial watercourse may be made under such circumstances as to confer all such rights as a riparian owner would have had in the case of a natural stream.

4. In an action to recover damages for a delay in floating logs down a river, alleged to be navigable, caused by unlawful obstructions therein, and for the statutory penalty for such obstructions, a counterclaim alleged that the defendants had made a short cut across a bend in the river upon their own land, "for the purpose of improving the navigation of said river and lessening the expense of driving and booming logs thereon to all persons choosing or desiring to use such improvement;" that by reason of such artificial channel and of water furnished from the defendants' dam at plaintiff's request, the passage of the logs through the stream had been accelerated instead of retarded; and that the use of said channel and water and the labor of six men furnished by the defendants to aid in running the logs were worth $500. On a demurrer to the counterclaim, *held:*

(1) For the purposes of the demurrer the stream must be regarded as navigable.

(2) The artificial channel was dedicated to the public use of all persons desiring to float logs through it; and after allowing it to be thus used, without objection, the defendants cannot recover compensation for such use.

(3) The cause of action for the services of the men furnished by the defendants did not arise out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, nor was it connected with the subject of the action within the meaning of sec. 2656, R. S. *Heckman v. Swartz,* 55 Wis., 173.

APPEAL from the Circuit Court for *Waupaca* County.

The case is thus stated by Mr. Justice CASSODAY:

"The complaint contains two counts. One for wrongfully and unlawfully obstructing the Little Wolf river, a public navigable stream, by the dam and booms of the defendants, and thereby hindering and delaying, for the period of thirty-one days, the logs of the plaintiff being floated down said river, to the special damage of the plaintiff in the sum of $300. The other was for the forfeiture of $25 a day for each of said thirty-one days by reason of such obstruction, under sec. 1598, R. S., making the amount of such forfeiture $775. The defendants, besides answering defensively, alleged, in effect, by way of counterclaim, that the natural channel of the river, for a portion of the distance covered by the pond

Weatherby vs. Meiklejohn and another.

created by the dam of the defendants, was very tortuous, making long detours from a direct line, and then running nearly to the point of departure, which feature in said river greatly hindered, delayed, and made very expensive the floating of logs and timber down said river, and that for the purpose of improving the navigation of the river, and lessening the expense of driving and booming logs thereon to all persons choosing or desiring to use such improvements, the defendants, prior to the supposed injury, at their own expense and on their own land, constructed a canal from said river, above a long bend in the same, straight across to the river immediately below, of sufficient size and capacity to admit of the floating of logs and lumber through the same, thereby affording a straight, navigable channel, and avoiding the trouble and expense of driving logs around said bend by the natural channel, and greatly lessening the expense of driving logs at that point; that the defendants, at the special request of the plaintiff, furnished through and by means of their said dam, by raising the gates therein, water to aid the plaintiff in floating and driving his logs down said stream below said dam; that the plaintiff used and occupied the said channel for the purpose of floating his logs down said stream; that such use and the water furnished as aforesaid, and the labor of six men in assisting the plaintiff to run his logs through said pond, were worth $500; and the defendants thereby demanded that the same be allowed as a counterclaim against every claim the plaintiff might establish on the trial of this action sufficient to pay and discharge the same, and that for any excess thereof over and above such claim the defendants might have judgment, besides the costs of this action.

" To this counterclaim, the plaintiff demurred, on the grounds, in effect,— *First*, that the court had no jurisdiction; *second*, that it did not state facts sufficient to consti-

tute a cause of action; *third,* that the cause of action stated was not pleadable as a counterclaim. The court overruled the demurrer, with costs, to which the plaintiff excepted, and from the order overruling the demurrer this appeal is brought."

For the appellant there was a brief by *Jackson & Thompson,* and oral argument by *Mr. Jackson.*

For the respondent the cause was submitted on the brief of *G. W. Cate.*

CASSODAY, J. The defensive portion of the answer is not before us for consideration, except in so far as it may be resorted to for the purpose of making certain what might otherwise be regarded as indefinite and uncertain in the counterclaim. It is the settled law of this state that streams of sufficient capacity to float logs to market are navigable. *Whisler v. Wilkinson,* 22 Wis., 572; *Sellers v. Union Lumbering Co.,* 39 Wis., 525; *Olson v. Merrill,* 42 Wis., 203; *Cohn v. Wausau Boom Co.,* 47 Wis., 324. The counterclaim, therefore, following the complaint, refers to the river as a navigable stream; for it has been held that a demurrer to the counterclaim goes back to the complaint. *Lawe v. Hyde,* 39 Wis., 355. It is there expressly alleged that the Little Wolf river is a public navigable stream. These things being so, we think the stream must, for the purposes of this demurrer, be regarded as a public navigable river. Is the artificial channel, cut by the defendants from one portion of their pond to the other, also to be regarded as a public navigable stream? The defendants claim it should not, and insist that it was a private channel, which the plaintiff was not obliged to use, but was bound to pay for if he did use. No authorities are cited for or against the proposition by either party. It appears from the counterclaim that it was cut "for the purpose of improving the navigation of said river,

and lessening the expense of driving and booming logs thereon, to all persons choosing or desiring to use such improvement."

In *Lawson v. Mowry*, 52 Wis., 235, it was assumed that owners of lots abutting upon the canal had the same riparian rights as they would if their lots abutted upon the river. Such was held to be the law in *Townsend v. McDonald*, 12 N. Y., 381. Whether such is the law in all cases or not, it would seem that an artificial watercourse may be made under such circumstances as to confer all such rights as a riparian owner would have had in the case of a natural stream. *Sutcliffe v. Brooke*, 9 Jurist (N. S.), 1112; *Wood v. Waud*, 3 Exch., 748; Coul. & F. on Waters, 247, 261.

In *Whisler v. Wilkinson, supra*, it was held that where it was very difficult or impossible to pass logs through a chute in the dam at the plaintiff's mill on such a river (navigable), but they could · be passed through a break in the dam in a "new channel" created on the plaintiff's land, which break had been suffered to remain some two months without repair, and had caused the deficiency of water at the chute, it was defendant's right, running logs from above, to pass them through such break and new channel, doing no unnecessary damage.

In the recent English work of Coulson & Forbes on the Law of Waters, page 416, it is said that "where a navigable river changes its channels, although the soil of the bed and the right of fishing may be vested in the owner of the adjoining land, so as to bar the right of the crown to the bed and of the public to the fishery, it would appear that the right of navigation will follow to the new channel, the test being whether the river remains tidal." See, also, Angell on Watercourses, §§ 58, 540.

The question is interesting, but we have no time now to pursue the investigation, nor do we think it necessary under the allegations of the counterclaim above quoted. The

short cut being made "for the purpose of improving the navigation of said *river*, and lessening the expense of driving and booming logs thereon to all persons choosing or desiring to use such improvement," must be deemed to have been left open without gates or guards, and hence free for the use of any one choosing or desiring to use the same. Nor does it appear that any objection was made by the defendants to its use. Such being the allegations, we must hold that the artificial channel in question was dedicated to the public use of all persons choosing or desiring to float logs through the same, and that after allowing it to be thus used without objection, the defendants are not entitled to recover from the plaintiff for its use any more than they could for the use of the stream had no such channel been cut.

The counterclaim to the alleged obstruction is, in effect, among other things, that by reason of the artificial channel, the dam, the gates, and the use of the water, the speed of the plaintiff's logs along this public navigable stream, above and below the dam, was, on the whole, actually accelerated instead of being retarded, and for such acceleration they ask to recover against the plaintiff. Such was the nature of the defense in *Volk v. Eldred*, 23 Wis., 410, where the dam was erected by authority of the legislature, but it was held not available; and for a much stronger reason it should not be available as a counterclaim where it does not appear that the dam or booms were by legislative authority. It is, in effect, the exaction of tolls for the improvement of a public highway. But the right to take tolls for passage over a public highway is a franchise to be acquired only by way of grant from the legislature. *Sellers v. Union Lumbering Co.*, 39 Wis., 525. Without discussing the question further, we must hold that that portion of the counterclaim seeking to charge the plaintiff for the use of the straight cut, the dam, the gates, and the use of the water, is without foundation, and furnishes no valid claim against the plaintiff.

As to that portion of the counterclaim seeking to charge the plaintiff for the services of the defendants or their men, we are clearly of the opinion that such services did not arise out of the transaction set forth in the complaint· as the foundation of the plaintiff's claim, nor were they connected with the subject of the action, within the meaning of sec. 2656, R. S.  This sufficiently appears from the opinion of Mr. Justice Orton in *Heckman v. Swartz*, 55 Wis., 173.

For the reasons given, the order of the circuit court must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— It is so ordered.